UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIA ISABEL A.S.,

Plaintiff,

v.

WARDEN OF THE CALIFORNIA DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-08128-TLN-JDP

A# 232-716-164

**RELEASE ORDER**

This matter is before the Court on Petitioner Maria Isabel A.S.'s [1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an Answer. (ECF No. 7.) Petitioner filed a reply. (ECF No. 12.) For the reasons set forth below, the petition is GRANTED. (ECF No. 1.) Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner, a citizen of Chile, entered the United States on November 3, 2022, pursuant to the Visa Waiver Program ("VWP") for a temporary period not to exceed January 31, 2023. (ECF No. 1 at 32; ECF No. 7 at 2; ECF No. 12 at 16.) Petitioner remained in the United States beyond this date without authorization. (ECF No. 7 at 2.) On July 4, 2023, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. (ECF No. 12 at 15–24.) Petitioner's asylum proceedings are ongoing. (ECF No. 1 at 15; ECF No. 12 at 30–33.) Prior to her detention, Petitioner worked 40 hours a week, owned a cleaning company, paid taxes, and was the primary caregiver for her five-year old son. (ECF No. 1 at 11, 24–25; ECF No. 12 at 3.)

On July 6, 2026, Petitioner was arrested by local police in Jacksonville, Florida, following a domestic incident involving her daughter. (ECF No. 7-1 at 2; ECF No. 7-5 at 1–3; ECF No. 12 at 2.) Prior to the July 6, 2026 arrest, she had no criminal history. (ECF No. 7-4; ECF No. 12 at 3.) Petitioner was transferred from the custody of local police to Immigration and Customs Enforcement ("ICE") on July 7, 2026 and has been in ICE detention since then. (ECF No. 12 at 12.) Petitioner was subsequently transferred to the California City Immigration Processing Center on or about September 13, 2026. (*Id.*) On October 2, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus and Motion for TRO. (ECF Nos. 1, 3.)[2] She challenges the lawfulness of her civil detention and seeks immediate release, and in the alternative a bond hearing. (ECF No. 12 at 1, 10.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[2] Petitioner also filed a motion to proceed IFP. (ECF No. 2.) This Court granted the IFP motion. (ECF No. 8.)

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

"Because § 1226 is not limited to [noncitizens] deemed 'applicants for admission,' the [noncitizens] subject to § 1226 include other [noncitizens], such as admitted [noncitizens] 'who overstay or violate the terms of their visas' or who 'engage in conduct that renders them removable.'" *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026).)

## III. ANALYSIS

Respondents argue: (1) Petitioner is lawfully detained under 8 U.S.C § 1187(c)(2)(E) for violating the terms of the VWP; (2) Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(2) because she has an administratively final removal order; and (3) Petitioner's asylum-only proceedings do not affect the finality of her removal order. (ECF No. 7 at 1, 3.) Petitioner disputes the applicability of 8 U.S.C §§ 1187(c)(2)(E) and 1231(a)(2), and argues her detention violates the Due Process Clause. (ECF No. 12 at 2.)

First, the Court addresses the statutory authority for Petitioner's detention. The Court then addresses Petitioner's constitutional claim.

### A. Statutory Authority for Detention

The parties dispute the statutory basis for Petitioner's detention. Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(2) and detention pursuant to 8 U.S.C. § 1187(c)(2)(E). (ECF No. 7 at 1.) Petitioner disputes both statutory authorities, instead arguing 8 U.S.C. § 1226(a) applies. (ECF No. 12 at 4–7.)

#### *i. 8 U.S.C. § 1187(c)(2)(E)*

Respondents cite *Matter of A.W.*, 25 I&N Dec. 45 (BIA 2009) for the proposition that 8 U.S.C § 1187(c)(2)(E) applies to VWP violators. (ECF No. 7 at 1 n.1.) Petitioner argues courts have held that § 1187(c)(2)(E) does not apply to VWP overstays. (ECF No. 12 at 4–5.) In

*Quispe v. Chestnut*, the court explained the "statute governing the [VWP], 8 U.S.C. § 1187 does not address detention of noncitizens who violate the VWP, and the specific section relied upon by the government, § 1187(c)(2)(E), does not refer to detention at all." No. 1:25-cv-2002-CSK, 2026 WL 654577, at *3 (E.D. Cal. Mar. 9, 2026). In *Quispe*, the government also cited *Matter of A.W.*, 25 I&N Dec. 45 (BIA 2009). The court found *A.W.* unpersuasive:

> The government fails to acknowledge, however, that most federal courts that have directly addressed whether a noncitizen who has violated the [VWP] can be detained pursuant to § 1187(c)(2)(E) have held that § 1187(c)(2)(E) is not a valid basis for detention. *See Molina v. Soto*, 2025 WL 3281820, at *2-3 (D. N.J. Nov. 25, 2025) (granting petition and directing respondents to provide petitioner with a bond hearing); *Romance v. Warden York Cnty. Prison*, 2020 WL 6054933, at *4 (M.D. Pa. July 28, 2020), *report and recommendation adopted*, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020); *Sutaj v. Rodriguez*, 2017 WL 66386, at *5 (D. N.J. Jan. 5, 2017); *Neziri v. Johnson*, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) ("The BIA offers no explanation, however, as to why the Secretary of Homeland Security cannot delegate any [bond-setting] authority to the Immigration Judge under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain [noncitizens].").

*Quispe* at *2 (footnote omitted). This Court agrees with *Quispe* and determines 8 U.S.C. § 1187(c)(2)(E) is not a basis for detention for noncitizens who violate the VWP. *See also Hsiao v. Ice Field Officer*, No. 1:26-cv-04143-VC, 2026 WL 2836726, at *2 (E.D. Cal. Sept. 22, 2026) (finding "the text of § 1187(c)(2)(E) simply does not confer detention authority").

*ii. 8 U.S.C. § 1231(a)(2)*

Respondents' next asserted statutory authority for detention is 8 U.S.C. § 1231(a)(2) because Petitioner is "subject to a final administrative removal order." (ECF No. 7 at 1.) Petitioner argues her asylum application, filed in July 2023, "before DHS issued the July 8, 2026[] FARO" is pending, preventing her removal order from becoming administratively final. (ECF No. 12 at 5; *see also* ECF No. 1 at 11.) Respondents do not dispute Petitioner has open asylum proceedings, instead arguing the "asylum-only proceedings do not affect the finality of [Petitioner's] FARO." (ECF No. 7 at 3.)

The Court finds *Hsiao v. Ice Field Officer* instructive. In *Hsiao*, Respondents also argued

§ 1231(a)(2) controlled where petitioner entered the United States through the VWP and stayed beyond the VWP's expiration date. 2026 WL 2836726, at *1–2. The court stated petitioner's pending asylum application was "critical to the finality of" petitioner's order of removal. *Id.* at *2. The court determined "orders of removal issued pursuant to the VWP—as was the case with Petitioner's removal order here—are not final where the noncitizen has a pending application for asylum." *Id.* at *3.

Respondents rely on *Riley v. Bondi*, 606 U.S. 259 (2025), and *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), in support of their § 1231(a)(2) authority argument. (ECF No. 7 at 2–3.) The Court finds these authorities inapposite for the same reasons the court explained in *Hsiao*:

> Both *Guzman Chavez* and *Riley* considered the effect of withholding-of-removal proceedings on the finality of removal orders, but not the effect of asylum proceedings. In *Guzman Chavez*, the Supreme Court explained that an application for withholding-only relief does not affect the finality of an order of removal, given that withholding-only relief "relates to *where* an [noncitizen] may be removed[,]" and "says nothing, however, about the antecedent question *whether* an [noncitizen] is to be removed from the United States." 594 U.S. at 536 (emphasis in original). The Supreme Court, however, "distinguished withholding-only relief from asylum, noting that 'a grant of asylum permits an [noncitizen] to remain in the United States and to apply for permanent residency after one year.'" *Id.* (quoting *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999)). "This discussion in *Guzman Chavez* clearly implies that, for purposes of § 1231, a [VWP order of removal] is not final when an [noncitizen] is seeking relief which, unlike withholding, does say something about 'whether an [noncitizen] is to be removed from the United States.' Asylum fits the bill[,]" as a grant of asylum allows an individual to remain in the United States, and later seek lawful status.

*Hsiao* at *3 (internal citation omitted). In sum, the Court finds Petitioner's pending asylum proceedings render her removal order, issued pursuant to VWP, nonfinal. Consequently, 8 U.S.C. § 1231(a)(2) is not a proper detention authority for Petitioner.

*iii. 8 U.S.C. § 1226(a)*

Respondents do not argue Petitioner is detained pursuant to "[8 U.S.C.] § 1225, the statute for noncitizens seeking admission; or § 1226(c), the statute for noncitizens convicted of certain offenses." *Quispe*, 2026 WL 654577 at *3. And, per the above, the Court has found Petitioner's detention is not governed by 8 U.S.C. § 1187(c)(2)(E) or § 1231(a)(2). The Court determines Petitioner's detention is governed by 8 U.S.C. § 1226(a).

Section 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). And "§ 1226 include[s] other [noncitizens], such as admitted [noncitizens] 'who overstay or violate the terms of their visas.'" *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) (citation omitted). Petitioner lived in the United States for over three and a half years when she was arrested by local law enforcement in Florida. (ECF No. 7-5 at 1; ECF No. 12 at 2.) She is her five-year-old son's primary caregiver, has a registered cleaning company in Florida, works an additional forty hours a week to support her household, and pays her taxes. (ECF No. 1 at 11, 24, 32; ECF No. 12 at 8.)

Having found 8 U.S.C. § 1226(a) applies, Petitioner is entitled to the procedural safeguards afforded by 8 U.S.C. § 1226(a).

B. <u>Fifth Amendment Due Process Clause</u>

Petitioner alleges her detention without a pre-deprivation hearing violates due process. (ECF No. 12 at 6–7.) Respondents argue Petitioner is subject to mandatory detention. (ECF No. 7 at 1–3.) Having determined § 1226(a) applies, the Court finds Respondents' argument unavailing.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

the question remains what process is due.”).

*i. Liberty Interest*

“Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects.” Zadvydas, 533 U.S. at 690. “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual’s specific conditional release rises to the level of a protected liberty interest, courts have “compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.” *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner entered the United States on a nonimmigrant visa and later applied for asylum. Therefore, immigration officials were aware of Petitioner’s presence, initially approved of that presence, and when the visa status expired, did not promptly detain Petitioner based on the expiration of the visa status. In *Kharitonova v. Albarran*, the petitioner entered the United States on a nonimmigrant visa, applied for asylum, and resided continuously in the United States. No. 3:26-cv-01362-JSC, 2026 WL 531441, at *1 (N.D. Cal. Feb. 25, 2026). The court explained “[a]lthough the government did not detain and then release [petitioner], it made a decision *not* to detain [petitioner] in the first place; [p]etitioner thus has the same liberty interest in her continued freedom as an individual initially detained.” *Id.* at 2 (emphasis in original); *See also Kalkan v. Chestnut*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 at *1 (E.D. Cal. Mar. 20, 2026) appeal dismissed, No. 26-3277, 2026 WL 2446315 (9th Cir. 2026) (presenting an analogous fact pattern to *Kharitonova* and finding the court’s *Kharitonova* reasoning persuasive). Here, Petitioner gained a protected liberty interest in her continued freedom when she was permitted entry by immigration authorities on November 3, 2022. (ECF No. 12 at 16.) Petitioner pursued lawful immigration status through her asylum petition. (*Id.* at 15–24.) Even if she is ultimately removable, or her liberty is revocable, her established liberty interest is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

Put another way by a court in this district, various cases "in this circuit have found a liberty interest in similar circumstances involving 'noncitizens who originally entered the United States on a valid visa.'" *Tinoco v. Albarran et al.*, No. 26-cv-05505-DC-CKD, 2026 WL 2949219 at *5 (E.D. Cal. Oct. 1, 2026) (collecting cases). Finding *Tinoco*, *Kalkan*, *Kharitonova*, and numerous similar cases persuasive, the Court finds Petitioner has a protected liberty interest.

*ii. Procedures Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Despite Petitioner's strong liberty interest found above, Petitioner has been detained, separated from her family, including her five-year-old son, and unable to work for over four months without notice or an opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention.

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received no procedural safeguards such as a bond or custody redetermination hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The statute provides "extensive procedural protections" including several layers of review of the initial custody

determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Petitioner did not receive the requisite extensive procedural protections of 8 U.S.C. § 1226(a). There is no evidence in the record that Respondents provided Petitioner an initial custody determination, as required, nor provided the basis for her detention. *See Zurita Navarro* v. *Warden Ctrl. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (collecting cases and enumerating procedural violations of § 1226(a), including "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention," and "failure to provide the petitioner with the basis for the petitioner's continued detention"). The Court therefore concludes the risk that Petitioner is erroneously being deprived of liberty is considerable.

Finally, as to the third *Mathews* factor — government interest — the cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents, indeed, they are the very safeguards owed to Petitioner by statute. Nor do Respondents argue they would be burdened.

Upon consideration of the *Mathews* factors, due process required notice and a hearing as to Petitioner's detention. Respondents have not provided sufficient notice or any hearing either pre- or post-detention in over four months of custody. Petitioner's detention thus violates the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Maria Isabel A.S. (A# 232-716-164) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents must file a **notice certifying compliance** with this provision of the Court's Order **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8

U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's Motion for TRO is DENIED as moot. (ECF No. 3.)

4. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order**.

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 16, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE